PHILIP GOERLITZ, PLAINTIFF, *v.* CHARLES MALAWISTA AND ANOTHER, DEFENDANTS.

*Fee to a son or his issue, subject to a life estate — when the contingency relates to the death of the testator, and when to that of the life tenant.*

A testator, by his will, bequeathed his estate to his wife "for and during her natural life, if she shall so long continue and remain my widow, and upon her decease or second marriage the same to revert to my son, Anderson, or his issues, and such other children as I shall leave, or their issues." * * * In case my wife deceases or marries again, leaving no children of mine or their issues living, then I bequeath all my estate, both real and personal, to my surviving brothers and sisters.

*Held,* that the devise was in the alternative, and substitutionary.

That the contingency created thereby related to the death of the life tenant, and not to the death of the testator, and that the estate given to the son, Anderson, was a conditional fee, subject to be defeated by the birth of issue and the death of Anderson during the life of the life tenant.

Submission of a controversy without action, pursuant to section 1279 of the Code of Civil Procedure.

The controversy arose out of the refusal of the defendant to pay the balance of the purchase-price of certain premises in the city of New York, upon the ground that the title thereto, offered to be conveyed by the plaintiff, was defective.

*John E. Brodsky,* for the plaintiff.

*A. Stern,* for the defendants.

Barrett, J.:

The question presented by the agreed case is, whether a specific performance should be decreed of a contract for the purchase of certain premises in this city. The plaintiff is the vendor, and he asks a judgment requiring the defendants to so perform. The defendants asked to be released and pray that the plaintiff be required to return to them the sum paid on account of the purchase-price. The objection to the plaintiff's title arises from the will of W. Anderson Waydell, who owned one undivided third interest in the premises in question. The clauses of this will which we are called upon to consider are the " second " and " fifth." They read as follows :

*Second.* I give and bequeath unto my wife, Mary Elizabeth Waydell, all my real and personal estate, whatsoever and wheresoever, for and during her natural life, if she shall so long continue and remain my widow, and upon her decease or second marriage the same to revert *to my son Anderson or his issues,* and such other children as I shall leave, or their issues, share and share alike, provided that the issues of any deceased child of mine to be entitled to and receive only such portion as their parent would have received if living.

*Fifth.* In case my wife deceases or marries again, leaving no children of mine or their issues living, then I bequeath all my estate, both real and personal, to my surviving brothers and sisters, share and share alike.

The widow, Mary Elizabeth Waydell, is still alive and has not remarried. Anderson Waydell was the testator's only son. He is, alive and unmarried.

The plaintiff claims title under a deed executed by the widow and this son.   The surviving brothers and sisters referred to in the fifth clause of the will have fortified this deed, two of them by a quit-claim and two by a full covenant warranty deed.   The plaintiff contends that these deeds cover every possible interest in the premises, while the defendants insist that Anderson Waydell could not, by a conveyance during the lifetime of the widow, cut off the contingent interests of his future-born children.   The question thus presented is an interesting one.   W. Anderson Waydell gave his widow a life estate so long as she remained a widow   Upon her decease or second marriage the property was "to revert" — meaning to go "to Anderson Waydell *or* his issues."   Both sides agree, and correctly, that the words "or his issues," as here used, are not words of limitation, but of substitution.   There is, indeed, nothing in the will which would justify our changing the phrase from the disjunctive to the conjunctive.   The disjunctive was used advisedly.   It appears again in the expression which immediately follows : "And such other children as I shall leave *or* their issues ; " and it appears once more in the fifth clause.   And further, the "issues" of any deceased child are to take "only such portion *as their parent would have received, if living.*"   Thus the devise was clearly meant to be in the alternative and substitutionary.

The real difference between the parties is, whether the contingency referred to is the death of the testator, or the death of the life tenant. The plaintiff, conceding that the words "or his issues" are substitutionary, claims that they were used to prevent a lapse in case Anderson Waydell should not be living *at the testator's death ;* and that thus, as Anderson survived his father, he took absolutely.

The defendants, on the other hand, making the same concession as to the substitutionary character of the words, claim that Anderson took a conditional fee, subject to its being defeated by the birth of issue thereafter, and the death of Anderson during the life *of the life tenant.*

It is a well-settled general rule that, where there is a devise or bequest, *simpliciter,* to one person, and in case of his death to another, the words refer to a death in the lifetime of the testator.   (*Vanderzee* v. *Slingerland*, 103 N. Y., 53.)   But this rule only applies when the context of the will is silent and affords no indication of a

contrary intent. (Id., 56.) "Indeed," said Andrews, J., "the ten-· dency is to lay hold of slight circumstances in the will to vary the construction and to give effect to the language according to its. natural import." This doctrine was reaffirmed and applied in *Mat- ter of New York, Lackawanna and Western Railroad Company* (105 N. Y., 95).

There can be no doubt that such circumstances exist in the case at bar. The plaintiff's contention entirely overlooks the provision as to the remarriage of the life tenant. The estate is given to her for and during her natural life, "if she shall so long continue and remain" the testator's widow; and "*upon her decease or second marriage*" it is to "revert" to Anderson or his issues. How could the testator possibly have intended the estate to·so revert upon his own death? He might have contemplated his wife's decease during his lifetime, but scarcely her second marriage. It is plain that he intended the alternative gift to relate to the termination of the life estate (while in actual enjoyment) by the death or remarriage of his widow. Thus Anderson took a remainder vested in right, but not in possession or enjoyment, and subject to be divested by his own death, with or without issue, during the lifetime of the widow. In the latter contingency the interest of his issue, if he have issue, will be changed from a contingent to a vested remainder. (*Moore* v. *Lyons*, 25 Wend., 144.) And such issue will take as purchasers· under the will, and not as heirs-at-law of their father. In the same contingency, if he die without issue, the executory devise over under the fifth clause will take effect. This fifth clause, read in connec- tion with the last words of the second clause, "as their parent *would have* received *if living*," strengthens these views, and the entire purpose of the testator becomes apparent.

The remainder is to vest in possession and enjoyment upon the death or remarriage of the life tenant. Then "*if living*" he is *to receive* what has previously been vested in right. Upon the happening of either of those events — the death or remarriage of the widow — the fee is to vest absolutely in Anderson, if he be then living. If not, it is to so vest in his living issue if such there be. If, however, Anderson be then dead and without living issue, the gift over takes effect. This conclusion is supported by the cases already cited and also by the English authorities. (*Girdlestone* v.

*Doe*, 2 Simon, 225; *Salisbury* v. *Petty*, 3 Hare, 93; *Price* v. *Lockley*, 6 Beav., 180; Jarman on Wills [5th Am. ed.], vol. 1, pp. 515–517; vol. 2, pp. 790–793.) In *Girdlestone* v. *Doe*, a testator bequeathed forty pounds per annum to A for life and after her decease to B or his heirs. It was held that B did not take the absolute interest, but that the words "or his heirs" created a substitutional gift for his next of kin in the event of B dying in the lifetime of A.

*Price* v. *Lockley* seems to be precisely in point, except that the will related solely to personalty while here the residue is mixed. The bequest was to the testator's wife for life or so long as she should remain his widow; and after her decease or second marriage, in either case, the property was to be sold and the proceeds divided equally "among my said (the testator's) four children or the survivor of them *or* their heirs."

One of the four sons assigned his share in the lifetime of the widow just as Anderson has done in the case at bar. This son died before the widow, leaving five children. It was held, upon the death of the widow, that these children took by way of substitution as against their father's assignee. And in *Salisbury* v. *Petty* the word "or" was held to mean, in case of the death of the primary legatee, prior to the actual receipt of the legacy, leaving issue. For which proposition the vice-chancellor cited *Hervey* v. *McLaughlin* (1 Price, 264), and the cases collected by Mr. Jarman (vol. 1 pp. 452, 454; vol. 2, p. 699 *et seq.*).

The case of *Black* v. *Williams* (51 Hun, 280) does not conflict with these authorities. There the contingency was plainly to happen in the lifetime of the testator. Fouque gave a life estate to his widow and a vested remainder, with full power of disposition to his son. He then proceeded: "In case of the death *of both my wife and son*, and that my son should be without any legitimate family, my property * * * should go to my family." In harmonizing the latter provision with the full power of disposal given to the son, there is a plain implication after the phrase, "in case of the death of both my wife and son," of the words "before my death."

It is, therefore, our judgment that no conveyance by Anderson, during the lifetime of the widow, can cut off the interest of any children hereafter born to him. Such children will take by substi-

tution in case of his death during his mother's life. At all events, the plaintiff's right is certainly not so free from doubt as to enable him to give the defendants a marketable title, under the rules which govern in specific performance, and consequently the defendants should not be compelled to take.

There should, therefore, be judgment upon the agreed case for the defendants, releasing them from the contract and directing the repayment of $2,000 and interest from the 17th day of May, 1889, with costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred in the result.

