Sanderson, S.
I am asked on this accounting to make a construction of certain portions of the will of Buel Maben, deceased. The question submitted is, whether the legacy_given to his daughter Abigail, now deceased, goes to her administrator or to the other children of the testator.
The first clause of the will of Buel Maben gives his household furniture to his two daughters, Diadamia and Abigail.
*791 The second clause gives $1,000, with the musical instrument, to Diadamia.
The third clause gives to one of his grandchildren $100.
The fourth clause gives all the rest of his property in trust to his executors under his will.
The fifth clause empowers his executors to sell his real estate, .and to divide his estate into seven equal parts, each child, mentioned by name, to have one share.
The sixth clause provides that if his daughter Diadamia dies without leaving a will her share and interest remaining is to be divided among his other children.
The seventh clause provides that if his son Jonathan dies without leaving a will, it is discretionary with the executors whether they shall pay his share remaining to the children of Jonathan or divide it among.the other children of the testator.
The eighth clause raises the question in dispute, and is here given in full: “ Eighth. If any of my children, except Diadamia, shall die without leaving child or children or heirs of the body, then the share or portion of my estate so given to such deceased child shall go equally to my other children but in the manner and subject to the like limitations as the specific bequests to each of them as has been hereinbefore provided and given.”
Four of testator’s children were appointed executors, of whom three, viz.: Wilbur B., Alanson J. and Diadamia, qualified. The will bears date January 25, 1886.
Buel Maben died February 13, 1886, leaving him surviving seven children, none having died before he did. His will was admitted to probate by the surrogate of Greene county in March, 1886. At the time of testator’s death three of his sons were or had been married and had children, two of his daughters were married and had children, and two of them, viz.: Diadamia and Abigail, were single. Diadamia was forty years of age and upwards, and had always lived with her parents until their respective deaths. Jonathan died in September, 1886, leaving children. His will has been proved and the executor has become a party to these proceedings. Antoinette died in July, 1888, leaving children. Abigail died in November, 1889, leaving a husband but no children or descendants. Her husband was made, administrator of her estate and has become a party to these proceedings.
It is claimed by the executors of Buel Maben that Abigail having died without leaving children or heirs of her body, the share which was given her in the will goes to the other children. On the other hand, it is claimed by her administrator that the death without children referred to in the eighth clause of the will -relotes only to a death in the lifetime of the testator.
The court of appeals in Vanderzee v. Slingerland, 103 N. Y., 47; 2 N. Y. State Rep., 732, has stated the rule to be that where there is a devise .or bequest simpliciter to one person absolutely, and in case of his death to another, the words of contingency refer to a death in the lifetime of the testator. From the time of Moore v. Lyons, 25 Wend., 119, this rule has never been questioned. But the case becomes greatly complicated when the de *792 vise or bequest is to one or more persons, and in case of the death of either of them without children, the devise or bequest is made to a survivor or third person. An examination of some of the leading cases in this state may lead to a better understanding of the rule which has finally been adopted by the court of appeals in devises of the character last above mentioned.
The first case of considerable importance is Anderson v. Jackson, 16 Johns., 382, decided by the court of errors. In this case the devise was to the two sons of the testator, and “ if either of my said sons should depart this life without lawful issue his share or part shall go to the survivor.” This was held to be a good executory devise to the survivor, on failure of issue living at the death of either of the sons.
The question debated was whether the failure of issue was an indefinite failure, or was it a failure on the death of the first son who should die.
Ho suggestion was made that the death referred to must occur during tne lifetime of the testator. Later cases state that the strength of this case rests on the word “ survivor.”
In Black v. Williams, 51 Hun, 280 ; 21 N. Y. State Rep., 263, where the devise was to a son to dispose of as he wishes, and if he dies without a legitimate family, then over, it was held that the death must' occur during the lifetime of the testator, distinguishing this case from Anderson v. Jackson, supra, by reason of the power of absolute disposition given the son. Van Horne v. Campbell, 100 N. Y., 287, is distinguished in the same way.
In Norris v. Beyea, 13 N. Y., 275, where the language of the will is, “ in case either of my four daughters shall die before having attained to the age of twenty-one years, and without lawful heirs, then I give, devise and bequeath all the estate, real and personal, of said daughter, or daughters, so dying, as aforesaid, to their surviving sistersthe court, without remarking upon the subject of dying during minority, say, “the executory limitation is to the surviving sisters of the first named legatees; and that language has been repeatedly held in our courts to be a decisive indication that the want of issue referred to was issue living at the time of the death of the tenant of the precedent estate. Executors of Moffat v. Strong, 10 Johns., 12, 16; Anderson v. Jackson, 16 id., 382. * * * By 1 R. S., 724, § 22, it is enacted that where a remainder is limited to take effect on the death of any person without heir or heirs of his-body, or without issue, the words “heirs” or “issue” shall be construed to mean heirs or issue living at the death of the person named as ancestor; and by 1 R. S., 773, § 2, it is declared that-limitations of future or contingent interests in personal property, except in one particular not material to the present question, shall be subject to the rules prescribed in reference to future estates in land.”
In Tyson v. Blake. 22 N. Y., 558, where the testator’s property was to be divided among his four daughters, “ but in case one of them, Mary, should die without lawful issue, then her share was to be divided among the other three," it was held that the *793 legacy was good for Mary’s life, and if she died without issue, the gift over was held good. Comstock, Ch. J.: “I think this would mean a definite failure of issue; that is, a failure at the time of her death, even according to common law construction of the language. But this is not important. The statute now imperatively requires that construction to he given. 1 R. S., 724, § 22; 773, § 1
Except in the particulars to be hereinafter mentioned, it would be difficult to distinguish the above case in principle from the one in hand.
In Livingston v. Greene, 52 N. Y., 118, where the devise was to his children, and should any of them die and leave lawful heirs, such heirs to receive the piortion their parent would have been entitled to, it was held that the substitutionary clause as to children dying and leaving issue must, in the absence of controlling circumstances, be restricted to death before' testator’s death.
In Nellis v. Nellis, 99 N. Y., 505, the devise was to two grandsons, and in case either of them “die without lawful issue, the survivor shall take the share and portion of the one dying.” Held, that the death referred to might occur before or after the death of the testator.
In Quackenbos v. Kingsland, 102 N. Y., 128; 1 N. Y. State Rep., 175, the court construed words similar to those last above mentioned to refer to a death during the lifetime of the testator, but a part of the reasoning of the court is based upon the use of a different class of words in the residuary clause from those used in clauses giving general legacies, indicating a different intention in the former from what it is in the latter case.
It would be difficult in the form of the words used for gifts ever to reconcile the various decisions upon this subject. There ■is one test, however, that courts almost invariably apply in ascertaining the meaning of a will, and that is the intention of the testator. This is said to be the “polar star” to guide the judges in the determination of the construction of a will. If the intention of the testator can be gathered from the instrument itself and from surrounding circumstances the rule is unhesitatingly applied. So in this class of cases the question is did the testator intend, in whatever way he expressed in words the gift over on the death of the first taker without children or issue, to provide for lapsed legacies, or did he intend to give a new direction to his legacies if the contingency referred to should happen? This is the very seat and centre of the difficulty.
In Ware v. Watson, 7 DeG., M. & G., 248, 258, Turner, L. J., uses these words: “We then come to the proviso with respect to the shares of sons dying without issue. This is a proviso vjhich in different wills has different meanings according to the intention of the testator. It may be intended to take effect by substitution or by limitation,' and if by limitation it may be intended to operate generally or may be confined to the period of testator’s life.” In the same case Lord Justice Knight Bruce says: *794 “ In common with all men I must acknowledge that there are many cases upon the construction of documents in which the spirit is strong enough to overcome the letter; cases in which it is impossible for a reasonable being, upon a careful perusal of an instrument, not to be satisfied from its contents that a literal, a strict or an ordinary interpretation given to particular passages, would disappoint and defeat the intention with which the instrument, read as a whole, persuades and convinces him that it was framed. A man so convinced is authorized and bound to construe the writing accordingly.” To the same effect the court of appeals in Quackenbos v. Kingsland, supra, “An authority upon the language of one will furnishes little aid towards the construction of another.”
In Vanderzee v. Slingerland, 103 N. Y., 47; 2 N. Y. State Rep., 732, the court state in substance that where there are indications in the will that the gift over should take effect upon the death of the first taker without issue at any time, either before or after the death of the testator, that the rule of construction which applies to the words “death without issue,” when standing alone, does not apply, and courts will lay hold of slight circumstances to vary the construction and to give effect to the language according to its natural import
Accordingly, in that case, where the gift was to Cornelius, “subject to the proviso hereinafter contained,” the court says: “That the more natural meaning suggested by the words, subject to the proviso hereinafter mentioned, would be that the testator intended to subject the estate in the hands or possession of Cornelius, when he should take it under the will, to some condition.”
So in the case in hand, the gift over in the eighth clause of the will is “subject to the like' limitations as the specific beqqests to ■each of them as has been hereinbefore provided and given.” These words go to show that the testator is providing for deaths after his own. This will even more forcibly appear when we come to examine the meaning of the eighth clause.
In the Matter of N. Y., L. & W. R. Co., 105 N. Y., 89; 6 N. Y. State Rep., 851, the rule above stated is further explained and enforced. In that case the gift .over was in case of the death of the first taker “without issue.” The clause ended as follows: “ The devise over to my husband, sister and brothers to depend upon the contingency of my daughter Minnie dying without issue.” There is nothing in this closing sentence, considered alone, which forbids the contingency to happen during the life of the testatrix in that case. -But the court in effect say that the repetition itself is sufficient proof that the testatrix intended that the gift over was to depend on no other contingency than the death of the daughter without issue.
There are at least three separate grounds besides the proviso above mentioned upon which to infer from the language of the will in this case that the testator had in mind in the eighth clause of the will events which might happen after his death. The fifth clause of the will gives absolute ownership to each child of the share given it, but this share is subject to the provisions therein- *795 after contained. The sixth clause of the will provides that if. Diadamia should die without leaving a will her share remaining should go to the other children. The words are a limitation upon the ownership of Diadamia. If she should die at any time without leaving a will the gift over would take effect. This would be so upon general principles, and is particularly so in this case. Diadamia must outlive her father in order that her will may take -effect upon the property which he left her in his will.
The statute provides that a legacy to a child does not lapse by reason of her or his death during the lifetime of the testator, but in such case it shall go to the surviving children or other descendants of such deceased child. , 3 R S., 7th ed., 2287, § 52. But for every other purpose it would seem to lapse. Cook v. Munn, 12 Abb. N. C., 344. Diadamia was a favorite child of her father. She had lived with him up to the time of his death. She had never married, and had reached a time of life when presumably she would always remain single. The will gives her $1,000 more than it does any of the other children. The sixth clause is a restriction upon the ownership of Diadamia; the restriction is slight, but it relates to the event of her death after that of her father. The seventh clause makes a similar provision in the case of his son Jonathan. If he should die without leaving a will, tlien it becomes discretionary with the executors to pay the share left to him remaining to Jonathan’s children, in such manner as they should see fit, or to divide it equally among the other children of the testator. Jonathan was married and had children at the time the will of his father was made. If Jonathan should die at any timé without leaving a will, the gift over in trust would take effect. Then we come to the eighth clause of the will. It seems evident that the scheme of the will is to retain the property in the family of the testator, and to this intention courts will give effect.
If these circumstances are to be considered along with the eighth clause, it would seem highly probable that the testator intended to make further provision for retaining his property in his own family.
This view of its meaning is more in accordance with the scope and purpose of" the will than it would be to regard the eighth clause as substitutionary, providing for lapsed legacies.
The ninth clause also relates to events which might occur after the death of testator, and which would defeat the absolute ownership of the legatees. All but two of the children of the testator had children at the time of the execution of the will. There was little, if any, probability that any of them would die without issue before the testator, and yet a very considerable portion of the will is taken up with provisions for succession to the shares of children who should die without issue.
It would seem quite plain that the testator had in mind something more than the death of one or more of his children without issue during his lifetime.
Diadamia is excepted from the limitation of the first part of the eighth clause. The words “except Diadamia” in the eighth *796 clause indicate very strongly that the reason of the exception is that provision is made for a gift over in case of her death in the sixth clause.
But we have already seen that the sixth clause relates to death after testator’s or whenever it may happen. If the eighth clause relates to death only before that of the testator, why should Diadamia be excepted ?
Of all the next of kin of the testator she was the one most likely to die without a child or children. If Diadamia should die before the testator her share would not pass under her will and it must necessarily go to the next of kin of the testator, if not otherwise disposed of in the will of her father. Understanding this clause as referring more particularly to death after the testator’s the reason of the exception becomes plain.
There is no restriction upon Diadamia’s ownership except death without leaving a will. Death without leaving issue defeats the ownership of either of the other children.
Owing to his peculiar family relations two limitations are placed upon Jonathan; death without issue and death without leaving a will. Diadamia is the most highly favored one. It seems to me that this exception of Diadamia is a strong circumstance to show that the testator had in view a limitation on the ownership of their shares by the respective legatees.
Another reason why this clause is not substitutionary is contained in the last part of the clause. In the case of a death without issue the other children must take the share of the deceased child “in the manner and subject to the like limitations as the specific bequests to each of them as hereinbefore provided and given.” The limitations referred to are undoubtedly the ones mentioned in the sixth and seventh clauses of the will. These clauses contain the only limitations that can be said to be “herein-before provided”
The application of them can only be made to Diadamia and Jonathan. It is highly improbable that the testator would impose a restriction upon Diadamia, the most highly favored one, in the ownership of her share, and place none at all upon the other children except Jonathan, if they should outlive him.
I conclude, therefore, that the words, “ die without leaving child or children or heirs of the body ” in the eighth clause are words of limitation, that the death referred to may happen before or after the death of the testator, and that Abigail having died without child or children or heirs of the body the contingency has happened provided for in the will, and that the share given her in the fifth clause of the will must now be divided among the other children of the testator.